**Weil, Gotshal & Manges LLP**

2001 M Street, NW Suite 600
Washington, DC 20036
+1 202 682 7000 tel
+1 202 857 0940 fax

**Mark A. Perry**
+1 (202) 682-7511
Mark.Perry@weil.com

VIA ECF

February 21, 2023

Catherine O'Hagan Wolfe, Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *In re TransCare Corp.*, Nos. 21-2547 & 21-2576 (argued December 16, 2022)

Dear Ms. Wolfe:

In response to the Court's Order of January 24, 2023, Lynn Tilton and the Patriarch Entities respectfully submit that both judgments should be reversed or vacated because the district and bankruptcy courts improperly included the value of Certificates of Need ("CONs") in the damages awards. (This error also taints the liability determinations, which should be reversed or vacated on the grounds set forth herein as well as those set forth in our prior briefing.)

1. **The damages awards resulted in a double recovery to the Trustee for the value of the CONs.**

The Trustee received the liquidation value of the CONs when he sold them, and the lower courts also included the value of two of the CONs in their damages calculations. That resulted in an impermissible double recovery.

There is no dispute that the CONs were never part of the Subject Collateral, and were instead retained by the estate and liquidated by the Trustee. SA30 n.15 ("[T]he CONs were part of the collateral retained as part of the ABL Priority Collateral."); SA36 ("[T]he Trustee also liquidated the seven CONs . . . but the CONs were part of the ABL Priority Collateral and were not included in the Subject Collateral."); Red Br. 15 ("The trustee, however, still owned the CONs required to operate the ambulances."). TC Hudson Valley and TC Ambulance Corp. held the two CONs most relevant here. The *stock* of those two companies was transferred to Transcendence, but the CONs were not. Rather, the Trustee retained those two CONs and liquidated them for $3.2 million. SA30 n.15; SA53.

But even though the CONs were never part of the Subject Collateral, the lower courts *double counted* the CONs by factoring them into the damages awards, and then refusing to deduct the amount the Trustee received when he liquidated the CONs. *See* SA53; SA67 & n.27; SA77; SA127; SA130; SA138-39; SA147. Mysteriously, the bankruptcy court concluded that it should not deduct the CONs' liquidation value from the damages awards because the "CONs were not included in the strict foreclosure or sale to Transcendence." SA67 n.27. This double counting requires reversal or vacatur of the damages awards.

February 21, 2023  
Page 2

**Weil, Gotshal & Manges LLP**

*First*, the CONs were a necessary and integral predicate to the lower courts' determinations that Transcendence had going-concern value. Both courts *assumed* that TC Hudson Valley and TC Ambulance Corp. would be able to use the CONs. *See, e.g.*, SA53 ("The CONs . . . allowed them to operate their ambulances and increased the value of their stock."); SA130 (similar). And they based their damages calculations entirely on pre-Transaction EBITDA projections that similarly assumed the CONs would become part of Transcendence. *See* SA30; SA53; SA58-59; JA555 (13:3-14); JA1976; JA2009. But because the CONs were not part of the Subject Collateral transferred in the actual Transaction, Transcendence could not use the CONs to operate TC Hudson Valley and TC Ambulance Corp. *See* SA30 n.15; SA36; SA53. Without the CONs, there was no way for the New York ambulance businesses to operate. JA788 (24:4) ("You needed [the CONs] to operate the business . . . ."); SA30 n.15 (similar); JA789 (25:4-5) (similar). And the third business line, TransCare Pennsylvania, could not operate because the Trustee blocked it from using the computer server (necessary for ambulance routes) and issuing payroll. SA32-34; SA119; JA490 (22:4-25); JA601 (148:22-25). Thus, it was the Trustee's own actions that prevented the business from having any chance of becoming a going concern. Despite these facts, however, the lower courts awarded the Trustee the supposed going-concern value of Transcendence.

The Transaction can be analogized to making a cake from a mix. Transcendence received the dry ingredients (the ambulances, along with the stock of TC Hudson Valley and TC Ambulance Corp.), SA30; SA32, and Tilton agreed to provide the heat (the cash infusion necessary for the businesses to have any chance of survival), JA567-68 (25:24-26:3); JA652 (13:6-23). But the Trustee kept the eggs (the CONs), SA30 n.15, and refused to let Tilton use other ingredients that she actually foreclosed upon (such as the critical computer server), SA33-34. A baker can put dry ingredients in an oven and crank up the heat for as long as she wants, but without eggs and leavening, no cake will ever result. Nonetheless, the lower courts awarded the Trustee the value of a fully baked cake (the supposed going-concern value of Transcendence) even though there was no way for Tilton to make a cake without the eggs (the CONs) and other ingredients that the Trustee retained or refused to let Tilton access.

Had damages been calculated based on the *assets actually transferred* as part of the Subject Collateral (*i.e.*, without the CONs), there would be no way to ascribe a going-concern value to Transcendence because there is no dispute that TC Hudson Valley and TC Ambulance Corp. could not operate without the CONs, which were never transferred to Transcendence, and the remaining business line could not operate without the computer server, which the Trustee blocked Transcendence from accessing. The undisputed fact that the CONs were always part of the estate, and were liquidated by the Trustee, highlights the fundamental fallacy in awarding *any* going-concern damages in this case.

*Second*, to continue the metaphor, the lower courts compounded this error by allowing the Trustee to receive *both the eggs* (the CONs' liquidation value) *and the cake* (damages for the going-concern value of the entirety of Transcendence). The lower courts professed to conduct the fraught exercise of deducting the liquidation value of the Subject Collateral from the going-concern damages. *See* SA67; SA71; SA77; SA138-39; SA147. But when it came to the CONs—assets that were essential to (and included in) the going-concern damages but not actually part of the Subject Collateral—the lower courts refused to deduct any amount from the damages awards. *See* SA67 n.27. That was erroneous—indeed, even the Trustee proposed a reduction of the damages to account for the CONs. *See* ECF No. 134 ¶¶ 314, 319; SA67 n.27.

February 21, 2023  
Page 3

**Weil, Gotshal & Manges LLP**

The Trustee was "not entitled to double recovery, or a windfall that would benefit the estate." *In re Andrew Velez Constr., Inc.*, 373 B.R. 262, 275 (Bankr. S.D.N.Y. 2007). For the fraudulent transfer claim, the Trustee was only allowed to recover "the property transferred, *or* . . . the value of such property." 11 U.S.C. § 550(a) (emphasis added); *accord Andrew Velez Constr.*, 373 B.R. at 274-75. And the same principle barring double recovery applied to the breach of fiduciary duty claim. *See* SA67; SA131; SA138-39; *see also Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1277 (Del. 2021) ("The double recovery rule prohibits a plaintiff from recovering twice for the same injury from the same tortfeasor."). The Trustee received all of TransCare's assets, including the assets that were initially transferred to Transcendence, and he fully recovered the value of those assets when he liquidated them. SA120; Blue Br. 52-54, 62. Thus, he should not have recovered anything further from Tilton or the Patriarch Entities. Yet the Trustee received an inflated recovery twice over: First when the CONs were used to support a going-concern valuation even though they were never transferred to Transcendence, and second when the courts refused to deduct the liquidation amount of the CONs from the resulting valuation.

**2.   The damages awards should have been offset by the value of the CONs.**

At a minimum, the damages awards must be offset by the liquidation value of the CONs that the Trustee retained and liquidated. But this Court should vacate and remand because the *entire* damages calculation was based on the false assumption that Transcendence could operate as a going concern, and simply deducting the CONs' liquidation value does not remedy this error.

As discussed above, the lower courts erred by factoring the CONs into the going-concern valuation of Transcendence. *See, e.g.*, SA53; SA130. Because the CONs were never part of the Subject Collateral, TC Hudson Valley and TC Ambulance Corp. could not operate, and those two entities never had any going-concern value. *See* SA30 n.15; JA788 (24:4-6). And without those two business lines, the Trustee did not (and cannot) prove that Transcendence as a whole had *any* going-concern value. In fact, the remaining business line could not operate either, because the Trustee blocked Transcendence from accessing the computer server and issuing payroll checks. SA32-34; SA119. Reversing or vacating is the only way to address this critical error in the lower courts' damages calculations.

A simple "offset" of the $3.2 million the Trustee received for these two CONs would not fix this error. The ability to use the CONs (and, thus, operate an ambulance service) was an essential predicate to the pre-Transaction EBITDA estimates as well as the going-concern damages calculations. Without the CONs, Transcendence was not worth $3.2 million less than the awards, but rather only the liquidation value of its assets. And of course, the Trustee already received that value when he liquidated *all* the assets, including the Subject Collateral, so any additional damages constitute a windfall. SA120; Blue Br. 52-54, 62; Gray Br. 23-27, 29.

But even if this Court accepts that it was not legal error to award going-concern damages and that the going-concern valuation of the Subject Collateral was not clearly erroneous, then the damages awards must at least be offset by $3.2 million, the liquidation value of the two CONs associated with TC Hudson Valley and TC Ambulance Corp. As explained above, at minimum, an offset is required because the lower courts improperly double counted those CONs in calculating the damages awards. *See Andrew Velez Constr.*, 373 B.R. at 274-75; *Rosson*, 261 A.3d at 1277.

February 21, 2023  
Page 4

**Weil, Gotshal & Manges LLP**

3.  **Challenges to the damages awards based on the lower courts' failure to offset the value of the CONs from the going-concern value were raised below and preserved on appeal.**

Tilton and the Patriarch Entities have argued time and again that the lower courts erred by improperly factoring the CONs into the value of Transcendence, which drove the damages calculations.

In the district court, Tilton objected to factoring the CONs into the value of TC Hudson Valley and TC Ambulance Corp. because that approach presupposed a going concern that did not exist and because the CONs were never part of the Subject Collateral. *See* ECF No. 3 at 72 n.46 ("Whatever value the two CONs had, they did not belong to NewCo, a fact the bankruptcy court acknowledged."); *id.* at 72 ("[I]t was not an 'error' for Tilton to exclude from the purchase price the value of the CONs for TC Hudson Valley and TC Ambulance Corporation. As the bankruptcy court acknowledged, PPAS only foreclosed on the stock of these two entities; it did not foreclose on the CONs themselves." (citation omitted)); *id.* at 71 ("[T]he [bankruptcy] court wrongly found using the book value for the three Debtors destined for Transcendence undervalued the Subject Collateral because it excluded the value of . . . certain TransCare Certificates of Need (the 'CONs')." (citation omitted)).

And Tilton clearly argued below that using going-concern value to assess fair price and award damages was improper because there was no going concern. *See* ECF No. 3 at 57 ("TransCare had no money and, as a result, was at the mercy of Wells which, during the two weeks in question, refused to extend a funding commitment for any period of time."); *id.* at 73 ("TransCare and its business lines could not continue operating as a going concern absent a continued voluntary cash infusion . . . ."); *id.* at 79 ("At the time of the foreclosure, TransCare (and NewCo) were on the verge of liquidation and thus had no going concern value."); *id.* at 98 ("In fact, TransCare had only one destination without new capital from one or more of its existing lenders: a fire sale of its assets in a liquidation—which is what ultimately occurred."). The improper inclusion of the CONs fatally infected the fiduciary-breach finding against Tilton, and while she did not expressly discuss the CONs in her damages arguments in the district court, Tilton reiterated that "the Trustee failed to prove that NewCo would have had *any* going-concern value," an argument that was tied to the earlier point that the CONs were not part of the Subject Collateral and did not add value to Transcendence. *See id.* at 79-80; *see also id.* at 72 & n.46.

In this Court, Tilton and the Patriarch Entities once again argued that the lower courts improperly inflated the value of TC Hudson Valley and TC Ambulance Corp. by improperly including the value of the CONs. Blue Br. 46 ("While the [district] court speculated the CONs increased the value of the stock of TC Hudson Valley and TC Ambulance Corp., the stock of a defunct company has no value." (citation omitted)); Gray Br. 15 ("[I]t was clear error to factor in the CONs' value."). As in the courts below, this argument was made in connection with the "fair price" analysis, which was the basis for the "going-concern" valuation of Transcendence. *See* Blue Br. 42-46; Gray Br. 11-16. Tilton and the Patriarch Entities then challenged the damages awards because they were improperly based on a "going-concern" value. Blue Br. 55-60, 62; Gray Br. 29. The argument that the lower courts' mishandling of the CONs requires reversal of the damages awards was thus preserved.

Moreover, Tilton and the Patriarch Entities have consistently asserted that the Trustee received a double recovery and is not entitled to *both* the property and its value. *See* Blue Br. 51-54, 59-60, 62; Gray

February 21, 2023
Page 5

Weil, Gotshal & Manges LLP

Br. 23-25.  *All* of TransCare's assets were transferred to the estate, either immediately or after a short delay, and *all* of the assets were liquidated by the Trustee.  SA120; Blue Br. 52-54, 62; Gray Br. 23-27, 29.  This argument necessarily encompasses the CONs, including any offset for their liquidation value.  **Indeed, the entirety of the damages award is a double recovery—a windfall—to the estate.  At a minimum, it was completely improper for the lower courts to double count assets like the CONs that were never transferred to Transcendence.**

Even if Tilton and the Patriarch Entities did not address the CONs in precisely the same terms as the post-argument Order, the Court has ample discretion to reach the issue.  This Court "ha[s] discretion to consider arguments waived [or forfeited] below because . . . waiver [and forfeiture] doctrine is entirely prudential."  *United States v. Gomez*, 877 F.3d 76, 95 (2d Cir. 2017) (citation omitted); *accord Mazzei v. Money Store*, 829 F.3d 260, 266 n.5 (2d Cir. 2016) ("[W]aiver doctrine is prudential, not jurisdictional," so the court "ha[s] discretion to consider waived arguments, and . . . ha[s] exercised this discretion where necessary to avoid a manifest injustice . . . ." (citation omitted)).  This Court has exercised that discretion to reach issues raised for the first time on appeal in post-argument letter briefs.  *See Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 101 n.3 (2d Cir. 2016) (exercising its discretion to reach an argument first raised in post-argument letter briefs "to remedy an obvious injustice" (citation omitted)).  So too here.  Given that this Court has the benefit of ample briefing on this legal and factual error, and the Trustee will have an opportunity to respond, it would be a manifest injustice not to correct it.

\*     \*     \*

As Tilton and the Patriarch Entities have repeatedly protested, the CONs should not have been factored into the fair price assessment or damages awards because they were never transferred to Transcendence.  Nevertheless, the lower courts awarded "going-concern" damages based on the demonstrably false premise that Transcendence would have been able to use the CONs to operate its ambulances in New York.  The lower courts even went so far as to count the CONs *twice* in their damages calculations.  That decision was wrong.  At the very least, the damages awards should be offset to account for the amount the Trustee received when he liquidated the CONs.  But the lower courts' mishandling of the CONs highlights the bigger problem with this case:  The lower courts posited a going concern that never existed (or could have existed); moreover, the estate ultimately received all of the property that was transferred in the foreclosure and received the value of that property.  Thus, the damages awards constitute an impermissible and unjust windfall to the estate, which did not suffer or prove one penny of harm caused by the Transaction.  This Court should reverse or vacate those awards even if it allows the liability determinations to stand.

Respectfully submitted,

*/s/ Mark A. Perry*

Mark A. Perry